ACCEPTED
02-17-00381-CR
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
5/24/2018 4:17 PM
DEBRA SPISAK
CLERK

# IN THE COURT OF APPEALS FOR THE
# SECOND DISTRICT OF TEXAS AT FORT WORTH

RECEIVED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS

5/24/2018 4:17:28 PM

DEBRA SPISAK
Clerk

**HECTOR JIMENEZ,** §
APPELLANT §
§
**v.** §     **No. 02-17-00381-CR**
§
**THE STATE OF TEXAS,** §
APPELLEE §

---

## STATE'S AMENDED BRIEF

---

FROM COUNTY CRIMINAL COURT NO.1
DENTON COUNTY, TEXAS
TRIAL CAUSE NUMBER CR-2016-05099-A
THE HONORABLE JIM CROUCH, JUDGE, PRESIDING

**PAUL JOHNSON**
Criminal District Attorney
Denton County, Texas

**CATHERINE LUFT**
Assistant Criminal District Attorney
Chief, Appellate Division
State Bar No.24013067
1450 East McKinney, Suite 3100
Denton, Texas 76209
(940) 349-2600
FAX (940) 349-2751
catherine.luft@dentoncounty.com

**BARRETT DORAN**
**ALI HORTON**
Assistant Criminal District Attorneys

*Oral argument is requested only if Appellant is requesting argument.*

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ...................................................................................ii

STATEMENT OF THE CASE .............................................................................1

STATEMENT OF FACTS ...................................................................................2

SUMMARY OF THE STATE'S ARGUMENTS ......................................6

STATE'S RESPONSE TO APPELLANT'S ISSUE ONE
(SUFFICIENCY) ..................................................................................................7

    Appellant's Contention ................................................................................7

    State's Reply ................................................................................................7

    Argument And Authorities...........................................................................7

        Standard of Review ..............................................................................7

        Pertinent Law.........................................................................................8

        The evidence was sufficient to support
        Appellant's conviction for DWI .........................................................8

STATE'S RESPONSE TO APPELLANT'S ISSUE TWO
(HEARING ON MOTION FOR NEW TRIAL) ......................................11

    Appellant's Contention ..............................................................................11

    State's Reply ..............................................................................................11

    Argument And Authorities.........................................................................11

        The trial court acted properly in not holding
        a hearing on Appellant's motion for new trial
        and allowing Appellant's motion to be overruled
        by operation of law .............................................................................11

CONCLUSION AND PRAYER..................................................................14

CERTIFICATE OF COMPLIANCE.......................................................14

CERTIFICATE OF SERVICE.................................................................15

# INDEX OF AUTHORITIES

**Statutes, Codes, and Rules**                                    **Page**

Tex. Penal Code Ann. § 1.07(a) (40) (West Supp. 2017) ......................... 10

Tex. Penal Code Ann. § 49.04(a) (West Supp. 2017) ............................... 8

Tex. Transp. Code Ann. § 724.061 (West 2011) ....................................... 9

**Cases**

*Annis v. State*
    578 S.W.2d 406 (Tex. Crim. App. [Panel Op.] 1979) ............................ 9

*Bartlett v. State*
    270 S.W.3d 147 (Tex. Crim. App. 2008) ................................................ 9

*Denton v. State*
    911 S.W.2d 388 (Tex. Crim. App. 1995) .............................................. 10

*Hailey v. State*
    87 S.W.3d 118 (Tex. Crim. App. 2002) ................................................ 12

*Jackson v. Virginia*
    443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ......................... 7

*Kelly v. State*
    824 S.W.2d 568 (Tex. Crim. App. 1992) .............................................. 13

*King v. State*
    29 S.W.3d 556 (Tex. Crim. App. 2000) ................................... 11, 12, 13

*Kirsch v. State*
    306 S.W.3d 738 (Tex. Crim. App. 2010) ................................................ 8

*Murray v. State*
    457 S.W.3d 446 (Tex. Crim. App. 2015) ................................................ 7

*Reyes v. State*
   849 S.W.2d 812 (Tex. Crim. App. 1993) ...............................................12

*York v. State*
   342 S.W.3d 528 (Tex. Crim. App. 2011) ...............................................10

| | | |
|---|---|---|
| **HECTOR JIMENEZ,** | § | |
| APPELLANT | § | |
| | § | |
| **v.** | § | **No. 02-17-00381-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLEE | § | |

_____

## STATE'S AMENDED BRIEF

_____


TO THE HONORABLE COURT OF APPEALS:


## STATEMENT OF THE CASE

The Charge ............................................. Driving While Intoxicated, 2nd
(C.R. at 7)
Tex. Penal Code § 49.04

The Plea ................................................................................. Not Guilty
(2 R.R. at 5, 101; C.R. at 100)

The Verdict (Jury) ........................................................................ Guilty
(3 R.R. at 111; C.R. at 98, 100)

The Punishment (Judge) ........................................365 Days, County Jail
(3 R.R. at 149; C.R. at 100)

1

# STATEMENT OF FACTS

At some time close to 1:00 a.m. in April of 2016, Appellant walked into a RaceTrac store and started talking to Alexis Melson, a RaceTrac employee, about food (2 R.R. at 108). Appellant was very friendly, although he "kind of smelled like alcohol" (2 R.R. at 108). Melson told Appellant that the store would not have food until 6:00 a.m., and Appellant walked away (2 R.R. at 108). Appellant then walked back to Melson, leaned on the counter, told her that she had beautiful eyes, and asked for her phone number (2 R.R. at 108-09, 113-14). Melson did not give him her phone number and, feeling as though Appellant had acted inappropriately during this second conversation, Melson went to her manager and told him how Appellant had approached her (2 R.R. at 109).

After talking to Melson, Appellant went outside the store, approached two girls who were walking in, walked and talked with them, and then approached another girl and started talking to her (2 R.R. at 109). He followed the girl inside the store as she went in to pay for her gas, followed her around the store, followed her out to her car and then, after she had gotten inside her car, Appellant started banging on the girl's window (3 R.R. at 109-10, 162).

Seeing what was going on outside, Melson told her manager about Appellant's actions and then went outside to confront Appellant so that the girl could leave the store (2 R.R. at 110). Then Melson, concerned for the safety of other people at the store, told her manager to call the police, and her manager did so (2 R.R. at 110-11). Appellant drove away from the RaceTrac in a northbound direction (2 R.R. at 111, 162).

Emery Flowers, a 911 telecommunicator, received a call about a man approaching a woman at a gas station, and Officers Antonio Barletta and James Robey were subsequently dispatched to the scene (2 R.R. at 119-20, 127, 162; State's Exhibit 1). Dispatch had told Officer Barletta that Appellant was driving a gold Geo Prism and had given the officer the car's license plate number (2 R.R. at 163).

Officer Barletta caught up with Appellant not too far from the RaceTrac, witnessed Appellant fail to signal twice, activated his overhead lights, and then followed Appellant's vehicle into a Quick Trip parking lot (2 R.R. at 128, 162-64; 3 R.R. at 40-43; State's Exhibit 2). Officer Barletta made contact with Appellant and saw that Appellant matched a description of the male who had been at the RaceTrac (2 R.R. at 165). Officer Barletta also detected a strong odor of alcohol coming

3

from Appellant's breath (2 R.R. at 165-66). Appellant's speech was "real slurred," he had red, watery eyes, and he was inconsistent about from which direction he had come (2 R.R. at 166-67). When Officer Barletta asked Appellant what the liquid was in a Styrofoam cup in Appellant's center console, Appellant replied that it was "nothing" (2 R.R. at 168).[1] Officer Barletta had Appellant get out of his vehicle and, when asked if he'd had any alcohol, Appellant replied that he'd had two beers (2 R.R. at 169; 3 R.R. at 11, 64-65).

Officer Barletta performed the horizontal gaze nystagmus ("HGN") test on Appellant, and Appellant exhibited six of six clues (2 R.R. at 170-82; 3 R.R. at 15-16, 46-51, 54-59).[2] Officer Barletta asked Appellant about taking the walk-and-turn and one-leg stand tests, and Appellant said no because he had hip or ankle injuries (2 R.R. at 132, 169-70, 182-84). Based on Appellant's HGN test, his not being able to follow simple instructions, his slurred speech, his swaying, his dry

---

[1]    When Officer Barletta later inventoried Appellant's car, he discovered that the liquid smelled like alcohol mixed with a soda (3 R.R. at 10-11).

[2]    Although Appellant told Officer Barletta that he'd had his head crushed in a vice recently, the officer did not see any markings on Appellant's head that would indicate that Appellant's head had been crushed by a vice, nor did Appellant's pupil size or tracking indicate that he had suffered traumatic brain injury (2 R.R. at 140-41, 144, 170-82; 3 R.R. at 39-40).

mouth, the odor of alcohol emitting from his breath, his bloodshot, "glazy" eyes, and the fact that he had caused a disturbance in a public place, Officer Barletta decided to arrest Appellant, so he placed Appellant in handcuffs and put him in the back seat of a patrol car (2 R.R. at 184-85; 3 R.R. at 8-9, 15, 17-19, 21-22, 32-33, 57, 65; *see also* 2 R.R. at 130-31, 139, 146-47, 154). After Appellant was placed under arrest, his mood changed; he became very violent, made threats, banged his head on the window, kicked the window, and did not consent to giving a sample of his breath or blood (2 R.R. at 132; 3 R.R. at 9-10, 16-18, 21, 59; State's Exhibits 2, 3). Specifically, Appellant said things to the officers such as "I hope y'alls' children fuckin' die of a suffering death," "hey fucking cocksuckers, fuck you," "I hope your kids choke on a dick," "I hope they cut your kids' heads off," "my posse's gonna kill your fucking ass," and "when I get out of jail, I'll fucking kill you myself, bitch," among other choice phrases (State's Exhibits 2, 3).[3]

---

[3] Officer Barletta testified that he added a charge of retaliation because of what Appellant said to him after Appellant was arrested (3 R.R. at 20-21).

# SUMMARY OF THE STATE'S ARGUMENTS

## *State's Reply To Appellant's Issue One*

The evidence was sufficient to support Appellant's conviction for Driving While Intoxicated ("DWI") as it showed that Appellant was intoxicated while operating a motor vehicle in a public place.

## *State's Reply To Appellant's Issue Two*

The trial court acted properly in not holding a hearing on Appellant's motion for new trial as none of the bare assertions in Appellant's motion established facts entitling him to a new trial.

# STATE'S RESPONSE TO APPELLANT'S ISSUE ONE
## (SUFFICIENCY)

## Appellant's Contention

The evidence was legally insufficient to support Appellant's conviction for Driving While Intoxicated ("DWI"), and this Court should reverse the conviction and order an acquittal or a new trial.

## State's Reply

The evidence was legally sufficient to support Appellant's conviction for DWI and Appellant's first issue should be overruled.

## Argument and Authorities

### Standard of Review

In reviewing legal sufficiency in a criminal case, an appellate court views all the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). When the record supports conflicting inferences, appellate courts presume the factfinder resolved the conflicts in favor of the verdict, and defer to that determination. *Murray v. State*, 457 S.W.3d 446, 449 (Tex. Crim. App. 2015).

**Pertinent Law**

A person commits a DWI if that person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code Ann. § 49.04(a) (West Supp. 2017).

**The Evidence was sufficient to support Appellant's conviction for DWI.**

The evidence was sufficient to support Appellant's conviction for DWI as it showed that Appellant was intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code § 49.04(a). For example, Appellant's intoxication was proved by evidence that he caused a disturbance in a public place, smelled like alcohol, failed to signal twice, was inconsistent about from which direction he had been coming, said he'd had two beers, said "nothing" was in his Styrofoam cup (which smelled like alcohol and soda), was not able to follow simple instructions, had slurred speech and a dry mouth, had bloodshot and watery or "glazy" eyes, swayed, and exhibited six of six clues on the HGN test (2 R.R. at 108-10, 130-31, 139, 146-47, 154, 162, 164, 166-82, 184-85; 3 R.R. at 8-11, 15-19, 21-22, 32-33, 46-51, 54-59, 64-65). *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (evidence of intoxication includes erratic driving, stumbling, swaying, slurring or

mumbling words, and bloodshot or glassy eyes). Additionally, Appellant refused to give samples of his breath or blood (3 R.R. at 9-10). *See* Tex. Transp. Code Ann. § 724.061 (West 2011); *Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (jury may consider refusal to provide breath or blood probative evidence of intoxication as it establishes consciousness of guilt). And the arresting officer testified that he believed that Appellant had lost the normal use of his mental or physical faculties due to alcohol (3 R.R. at 19). *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979) (police officer's opinion regarding defendant's behavior and opinion that the defendant was intoxicated provided sufficient support to uphold a jury verdict).

The evidence was also sufficient to show that Appellant was operating a motor vehicle at the time. Specifically, a RaceTrac employee pointed the officer in the direction Appellant had gone in his vehicle after leaving the store, and in less than two minutes the officer located a vehicle nearby that matched the description given, and saw the vehicle as Appellant was driving it down the road (3 R.R. at 162-64; State's Exhibit 2). After seeing the vehicle fail to signal twice, the officer activated his lights and followed the vehicle into the Quick Trip parking

9

lot (2 R.R. at 162-64; 3 R.R. at 40-43; State's Exhibit 2). Additionally, the officer's dash cam, which recorded the operation of Appellant's vehicle and the subsequent stop, was admitted into evidence (*see* State's Exhibit 2). *See also Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995) (driving a vehicle necessarily involves operation).

And the evidence was sufficient to show that Appellant was in a public place, as demonstrated by both Officer Barletta's testimony and the video of the stop (3 R.R. at 19; State's Exhibit 2). *See* Tex. Penal Code Ann. § 1.07(a) (40) (West Supp. 2017) ("'Public place' means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops"); *York v. State*, 342 S.W.3d 528, 537 (Tex. Crim. App. 2011) (parking lot and sidewalk around gas station is public place).

Accordingly, this Court should overrule Appellant's first issue presented.

## STATE'S RESPONSE TO APPELLANT'S ISSUE TWO

### (HEARING ON MOTION FOR NEW TRIAL)

## Appellant's Contention

The trial court erred in not holding a hearing on Appellant's motion for new trial because the testimony at trial supported that the State's fingerprint expert was not aware of the theory underlying fingerprint analysis.

## State's Reply

The trial court's actions were proper.

## Argument and Authorities

**The trial court acted properly in not holding a hearing on Appellant's motion for new trial and allowing Appellant's motion to be overruled by operation of law.**

Appellant's motion for new trial asserted that the verdict was contrary to the law and evidence and that the trial court had the discretion to grant a new trial in the interests of justice (C.R. at 116-18). It is true that a trial judge abuses his or her discretion in failing to hold a hearing when an accused presents a motion for new trial raising matters not determinable from the record that could entitle him to relief. *See King v. State*, 29 S.W.3d 556, 568-69 (Tex. Crim. App. 2000) (citing

11

*Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)). But the motion must be supported by affidavit specifically showing the truth of the grounds of attack. *Id.* Otherwise, general entitlement to a hearing could lead to "fishing expeditions." *Id.*

Here, none of Appellant's bare assertions in his motion established facts entitling him to a new trial. For example, he provided no support for his allegations that the verdict was contrary to the law and evidence or that the trial court should grant a new trial in the interests of justice. Nor did Appellant make any mention of the State's fingerprint expert in his motion (C.R. at 116-18). As such, Appellant's allegations were insufficient to allow the trial court to determine whether any testimony or other evidence would have been material to any issue in the case. *See Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002) (it violates ordinary notions of procedural default for a Court of Appeals to reverse a trial court's decision on a legal theory not presented to the trial court by the complaining party).

Moreover, in his brief on appeal, Appellant alleges that he established during trial that the State's fingerprint expert was not aware of the theory underlying fingerprint analysis (Appellant's Brief at 9). But

during the punishment phase of trial when the State's fingerprint expert testified, defense counsel took him on voir dire, fully questioned him about the science underlying fingerprint comparison, objected to the expert's testimony citing the *Kelly* factors, had his objection overruled, and received a running objection from the court (3 R.R. at 122-27). *See Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). Appellant has not established what he would have done differently in a new trial on punishment. *See King*, 29 S.W.3d at 569.

Accordingly, this Court should overrule Appellant's second issue presented.

## CONCLUSION AND PRAYER

Appellant's trial was without reversible error.  The State requests that Appellant's conviction and sentence be affirmed.

Respectfully submitted,

**PAUL JOHNSON**
Criminal District Attorney
Denton County, Texas

/s/ Catherine Luft
**CATHERINE LUFT**
Assistant Criminal District Attorney
Chief, Appellate Division
State Bar No. 24013067
1450 East McKinney, Suite 3100
Denton, Texas 76209
(940) 349-2600
FAX (940) 349-2751
catherine.luft@dentoncounty.com

## CERTIFICATE OF COMPLIANCE

The State certifies that the State's Amended Brief in the instant cause contained a word count of 2248, said count being generated by the computer program Microsoft Word that was used to prepare the document.

/s/ Catherine Luft
**CATHERINE LUFT**

14

## CERTIFICATE OF SERVICE

A true copy of the State's Amended Brief has been sent by electronic service through efile.txcourts.gov notification, to counsel for Appellant, Carlton Hughes, 118 Lynn Avenue, Suite 304, Lewisville, Texas 75057, at CarltonHughes@aol.com, on this, the 24th day of May 2018.

/s/ Catherine Luft
**CATHERINE LUFT**